UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| KRISTINA L. EDMISTON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 3:23-CV-767-HAB |
| | ) |
| MARTIN J. O'MALLEY, | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

**OPINION AND ORDER**

This matter comes before the Court on Plaintiff Kristina L. Edmiston's ("Edmiston") appeal of the Social Security Administration's Decision dated January 25, 2023 (the "Decision") which found that Edmiston was not disabled and not entitled to disability benefits. The parties have briefed the appeal. After considering the briefing and the administrative record, the Court finds, for the following reasons, that the Decision must be affirmed.

**ANALYSIS**

*Standard of Review*

A claimant who is found to be "not disabled" may challenge the Commissioner's final decision in federal court. This Court must affirm the ALJ's decision if it is supported by substantial evidence and free from legal error. 42 U.S.C. § 405(g); *Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002). Substantial evidence is "more than a mere scintilla of proof." *Kepple v. Massanari*, 268 F.3d 513, 516 (7th Cir. 2001). It means "evidence a reasonable person would accept as adequate to support the decision." *Murphy v. Astrue*, 496 F.3d 630, 633 (7th Cir. 2007); *see also Diaz v. Chater*, 55 F.3d 300, 305 (7th Cir. 1995) (substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.") (citation and quotations

omitted). In determining whether there is substantial evidence, the Court reviews the entire record. *Kepple*, 268 F.3d at 516. However, review is deferential. *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). A reviewing court will not "reweigh evidence, resolve conflicts, decide questions of credibility, or substitute [its] own judgment for that of the Commissioner." *Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003) (quoting *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000)). Nonetheless, if, after a "critical review of the evidence," the ALJ's decision "lacks evidentiary support or an adequate discussion of the issues," this Court will not affirm it. *Lopez*, 336 F.3d at 539 (citations omitted).

While the ALJ need not discuss every piece of evidence in the record, he "must build an accurate and logical bridge from the evidence to [the] conclusion." *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001). Further, the ALJ "may not select and discuss only that evidence that favors his ultimate conclusion," *Diaz*, 55 F.3d at 308, but "must confront the evidence that does not support his conclusion and explain why it was rejected," *Indoranto v. Barnhart*, 374 F.3d 470, 474 (7th Cir. 2004). Ultimately, the ALJ must "sufficiently articulate his assessment of the evidence to assure" the court that he "considered the important evidence" and to enable the court "to trace the path of the ALJ's reasoning." *Carlson v. Shalala*, 999 F.2d 180, 181 (7th Cir. 1993) (quoting *Stephens v. Heckler*, 766 F.2d 284, 287 (7th Cir. 1985) (internal quotation marks omitted)).

***Procedural Background***

Edmiston filed an application for benefits on April 8, 2020, alleging disability beginning on November 28, 2019. The claim was denied initially and on reconsideration. On March 21, 2022, the parties participated in a hearing before an ALJ. However, the hearing did not properly record. Thus, an additional hearing was held on July 18, 2022. One of the doctors could not be reached for

this hearing. Therefore, a third hearing was held on November 14, 2022. The ALJ issued an unfavorable decision on January 25, 2023. (R. 17-42). This appeal followed.

### *The ALJ's Decision*

A person suffering from a disability that renders him unable to work may apply to the Social Security Administration for disability benefits. *See* 42 U.S.C. § 423(d)(1)(A) (defining disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months"). To be found disabled, a claimant must demonstrate that her physical or mental limitations prevent her from doing not only her previous work, but also any other kind of gainful employment that exists in the national economy, considering her age, education, and work experience. § 423(d)(2)(A). If a claimant's application is denied initially and on reconsideration, she may request a hearing before an ALJ. *See* 42 U.S.C. § 405(b)(1).

An ALJ conducts a five-step inquiry in deciding whether to grant or deny benefits: (1) whether the claimant is currently employed, (2) whether the claimant has a severe impairment, (3) whether the claimant's impairment is one that the Commissioner considers conclusively disabling, (4) if the claimant does not have a conclusively disabling impairment, whether she has the residual functional capacity to perform her past relevant work, and (5) whether the claimant is capable of performing any work in the national economy. *See* 20 C.F.R. § 404.1520(a*); Zurawski v. Halter*, 245 F.3d 881, 885 (7th Cir. 2001). If step four is answered in the affirmative, the inquiry stops and the claimant is found to be not disabled. If step four is answered in the negative, the ALJ proceeds to step five.

Here, at step one, the ALJ found that Edmiston did not engage in substantial gainful activity since April 8, 2020, the application date. At step two, the ALJ determined that Edmiston had the following severe impairments: history of shingles; post-herpetic trigeminal neuralgia; headaches; asthma; chronic obstructive pulmonary disease (COPD); emphysema; degenerative disc disease of the cervical, thoracic, and lumbar spines; thoracic kyphosis and spondylosis; chronic pain syndrome; fibromyalgia; osteoporosis; sacroiliitis; right knee osteoarthritis; left foot degenerative joint disease; hypertension; mitral valve prolapse; tachycardia; anxiety; and depression. (R. 20). The ALJ further found that Edmiston had the following non-severe impairments: cataracts and blepharitis; macrocytosis associated with triple X syndrome; history of cervical cancer; gallstones; kidney stones; irritable bowel syndrome (IBS); hypothyroidism; goiter; laryngopharyngeal reflux; gastroesophageal reflux (GERD); dysphagia; history of MRSA; abscess; tinnitus; rash; mild carpal tunnel syndrome (CTS); arachnoid cyst; and left foot hallux abductovalgus deformity. (R. 21).

At step three, the ALJ found that Edmiston did not have "an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926)". (R. 23). At step four, the ALJ found that Edmiston had the residual functional capacity ("RFC") to:

> perform light work as defined in 20 CFR 416.967(b) except she can lift and/or carry 20 pounds occasionally, 10 pounds frequently; sit six hours total in an eight-hour workday; can stand and/or walk four hours total in an eight-hour workday. She can perform occasional overhead reaching with the bilateral upper extremities, and frequent reaching in all other directions with the bilateral upper extremities. She can frequently handle, finger, and feel with the bilateral upper extremities. She can occasionally push and/or pull with the bilateral upper extremities. She can frequently use foot controls with the bilateral lower extremities. She can never climb ladders, ropes, or scaffolds. She can occasionally climb ramps and stairs. She can occasionally balance, stoop, kneel, crouch, and crawl. She can have no exposure to unprotected heights, but she can have frequent

>           exposure to moving mechanical parts and operating a motor vehicle.
>           She can tolerate occasional exposure to humidity and wetness, dust,
>           odors, fumes, and pulmonary irritants, but she can have no exposure
>           to extreme heat, extreme cold, and vibrations. She can be exposed to
>           up to loud noises. She cannot perform jobs that require precise depth
>           perception, such as threading a needle or repairing a watch. She can
>           perform work involving simple instructions and routine, repetitive
>           tasks. She cannot perform work requiring a specific production rate,
>           such as assembly-line work, but she can meet production
>           requirements that allow a flexible and goal-oriented pace; and she can
>           maintain the focus, persistence, concentration, pace, and attention to
>           engage in such tasks for two-hour increments, for eight-hour
>           workdays, within the confines of normal work breaks and lunch
>           periods. She can make simple work-related decisions. She can deal
>           with changes in a routine work setting. She is able to interact
>           frequently with others.

(R. 27).

Also at step four, the ALJ found that Edmiston has no past relevant work. (R. 40). However, at step five, the ALJ found that there are jobs that exist in significant numbers in the national economy that Edmiston can perform. (R. 40). Thus, the ALJ ruled that Edmiston was not disabled, as defined in the Social Security Act. (R. 41).

***The ALJ's Evaluation of the Medical Opinions***

An ALJ must consider the persuasiveness of any medical opinions using several factors, including the supportability and consistency of the opinion, the existence and nature of any treating or examining relationship, any relevant specialization of the medical source, the medical source's familiarity with the other evidence in the claim, and the medical source's understanding of the disability program's policies and evidentiary requirements. 20 CFR 416.920c(a), (c)(1)-(5). The most important factors are supportability and consistency. *Id*. at (b)(2). An ALJ must explain how they considered the supportability and consistency factors in the decision. *Id*. "Supportability" refers to how "relevant the objective medical evidence and supporting explanations presented by a

medical source are to support his or her medical opinion(s)." *Id*. at (c)(1). "Consistency" refers to how aligned a medical opinion is "with the evidence from other medical sources and nonmedical sources in the claim." *Id*. at (c)(2). "The RFC assessment must always consider and address medical source opinions. If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted." SSR 96-8p.

In this appeal, Edmiston contends that the ALJ failed to provide an adequate evaluation of the opinions of four of the doctors who rendered an opinion: Dr. Golub, Dr. Gupta, Dr. Porchia, and Dr. Coulter-Kern. The Court will address each medical opinion separately.

### *1. Dr. Golub's Opinion*

Dr. Steven Golub, M.D., a medical expert, gave his opinions in response to medical interrogatories (Ex. B36F). Dr. Golub also testified at the hearing before the ALJ. He limited Edmiston to a reduced range of light work, finding that she could tolerate six hours of standing, four hours of standing and walking, and could perform frequent manipulations. (R. 59-60). Dr. Golub testified that Edmiston did not have physical impairments that met or medially equaled a listed impairment. Edmiston contends that she has severe carpal tunnel syndrome, and not just mild carpal tunnel syndrome as found by the ALJ, and that the ALJ improperly favored Dr. Golub's negative opinion over the more favorable opinion of Dr. Gupta.

The ALJ found Dr. Golub's opinion "mostly persuasive". (R. 38). The ALJ noted that Dr. Golub was an acceptable medical source, had knowledge and understanding of the Administration's programs, policies and requirements, and had carefully reviewed the record. The ALJ then held:

> [Dr. Golub's] opinions were based on his careful review of the record and his analysis of the claimant's identified impairments and her corresponding limitations. Furthermore, the overall conclusion that

6

>the claimant was limited to a range of light work, with postural, manipulative, and environmental limitations was consistent with the record as a whole, including the claimant's history of generally conservative treatment for her physical impairments during the period in question, consisting of medication therapy, routine primary care and specialist follow-up, pain clinic treatment, and physical therapy. In general, the claimant did not require any prolonged inpatient treatment during the period in question for acute physical symptoms and/or impairments. She was not involved in surgical intervention for her severe medically determinable physical impairments. However, the opinions of Dr. Golub were not more persuasive because he indicated in Exhibit B36F that the claimant could frequently perform bilateral reaching, in all directions, including overhead (Ex. B36F/5). However, at the hearing, he testified that the claimant could occasionally reach overhead and only frequently reach in all other directions (Hearing #3 testimony at 2:36:12). Further, the claimant had a history of shingles, which he did not mention. However, any problems associated with shingles were accommodated in the residual functional capacity with reduction to unskilled light work with sight and environmental restrictions (for any vision problems or pain), but the record does not support further restrictions due to shingles, as discussed above. Overall, the opinions of Dr. Golub were mostly persuasive.

(R. 38-39).

Edmiston has raised an issue concerning Dr. Golub's rejection of her dynamometer test results, which test was performed by the consultative examiner, Dr. Gupta. In the Decision, the ALJ noted that Edmiston's representative objected to the testimony of Dr. Golub on this point. (R. 18). The ALJ denied the objection, ruling that:

>Dr. Golub was clear in his replies to the claimant's representative that dynamometer readings concerning the claimant's grip strength and references to good testing effort in the consultative examiner records did not alter his opinion that the claimant's carpal tunnel syndrome was not a severe medically determinable physical impairment. Specifically, he noted that there was subjectivity and variability concerning dynamometer readings and reduced grip strength, which were his basis for finding the references in the records to dynamometer readings unpersuasive. Additionally, he repeatedly indicated that absent more objective testing on the issue of carpal tunnel syndrome and reduced grip strength, he did not feel the record supported that carpal tunnel syndrome was a severe medically

> determinable impairment.
>
> Dr. Golub was consistent in his testimony at the hearing that he did not feel the record contained the signs, symptoms, or laboratory findings to support that carpal tunnel syndrome was a severe medically determinable impairment. There is nothing in the regulations indicating that Dr. Golub is precluded from drawing his own opinions from the objective medical record and examination findings, or that he must co-sign whatever was detailed in/by the earlier consultative examiner. Therefore, the objection of the claimant's representative regarding Dr. Golub's testimony is denied.

(R. 18).

Edmiston contends that Dr. Golub's rejection of the dynamometer test results was inconsistent with the other medical evidence in the record and ambiguous, and that the ALJ's conclusions are not supported by substantial evidence. However, reading the Decision as a whole, it is clear that the ALJ discussed the evidence that supports a finding that Edmiston's carpal tunnel syndrome was not severe. The ALJ noted that a January 2022 neurological test showed that Edmiston's carpal tunnel syndrome was only mild. (R. 22, citing R. 1186-88). The ALJ further noted that Edmiston had declined corrective surgery before the relevant period and that no provider had recommended it after the date of alleged disability. (R. 23, citing R. 85, 1192). The ALJ concluded that the medical evidence did not show that Edmiston's carpal tunnel syndrome caused more than minimal functional limitations on her ability to perform basic work-related activities. (R. 23). An impairment that has no significant effect on a claimant's work- related activities is "non-severe". 20 C.F.R. §§ 416.920(a)(4)(ii), (c), 416.920a(d)(1), 416.922.

While Edmiston contends that "the ALJ was faced with very clear evidence that Dr. Golub's opinion was not reliable" (Reply at 3), her argument seems to rest on her belief that Dr. Golub could not in good faith have rejected the dynamometer test results. However, the Court fails to see any problem with the ALJ's reliance on Dr. Golub's opinion. Notably, even Dr. Gupta, who

8

administered the dynamometer testing, found that Edmiston had full range of motion of the upper extremities and 5/5 strength, with her grip strength being 5/5 bilaterally, with good fine finger manipulative abilities. (R. 31; Ex. B13F/3).  Faced with this array of evidence, it is clear that the ALJ's rejection of Dr. Golub's opinion was reasonable.  Although Edmiston disagrees with the way the ALJ weighed the evidence, it is not for this Court to re-weigh the evidence.

### 2. Dr. Gupta's Opinion

In contrast to Dr. Golub, consultative examiner Dr. R. Gupta, M.D., opined that Edmiston was unable to sit, stand, walk, or lift due to pain, but could carry and handle objects. (R. 1005). The ALJ recited all of Dr. Gupta's exam findings in detail. (R. 31). The ALJ then stated that:

> The opinions of Dr. Gupta were unpersuasive for multiple reasons. As an initial matter, the undersigned notes that Dr. Gupta is an acceptable medical source. However, the opinions of Dr. Gupta were vague and imprecise. He indicated that the claimant was unable to do work-related activities such as sitting, standing, walking, or lifting, due to pain; but she could do carrying and handling objects. This opinion does not clearly identify the claimant's remaining abilities in functional terms. Furthermore, it is unclear from this opinion how much carrying and handling the claimant could do, and whether she would be doing any sitting, standing, or walking in these carrying and handling objects, and if so, how much. Additionally, the opinions of Dr. Gupta are somewhat inconsistent with other significant evidence of record, including the subsequent opinions of the medical expert at the third hearing, Dr. Golub, who concluded that the claimant was limited to a reduced range of light work, with postural, manipulative, and environmental limitations (Hearing #3 testimony at 2:36:12). Overall, the opinions of Dr. Gupta were unpersuasive.

(R. 37).

Edmiston argues that the ALJ did not have a sound basis for rejecting Dr. Gupta's opinion, but merely rejected it because it was not the same as Dr. Golub's opinion. (Opening Brief at 21). This is clearly not the case.  Rather, Dr. Gupta's opinion was rejected because it was vague,

9

imprecise, and inconsistent with other evidence in the record; whereas Dr. Golub's opinion was accepted because his testimony was clear, he demonstrated a careful review of the record, he was a medical expert with knowledge of the evidentiary standards, and his conclusions were consistent with the overall record. (R. 38). Again, this Court will not re-weigh the evidence, and finds that substantial evidence supports the ALJ's conclusion to reject Dr. Gupta's opinion. *See Crowell v. Kijakazi*, 72 F.4th 810, 815-16 (7th Cir. 2023)(ALJ properly discounted vague medical opinion).

### 3. Dr. Porchia's Opinion

Dr. Tonia Porchia, PsyD., a psychological medical expert, testified at the hearing before the ALJ. The ALJ carefully considered Dr. Porchia's opinion as follows:

> The opinions of the psychological medical expert, Tonia Porchia, PsyD, were unpersuasive. Dr. Porchia gave her testimony at the hearing held on July 18, 2022. She testified that the claimant did not have any mental impairments that met or medically equaled a listed impairment (Hearing #2 testimony at 11:58:45). Initially, she indicated that the claimant did not have any severe mental impairments (Hearing #2 testimony at 11:58:05). However, she went on to indicate that the claimant had no limitation understanding, remembering, or applying information; mild limitation interacting with others; moderate limitation concentrating, persisting, or maintaining pace; and mild limitation adapting or managing oneself (Hearing #2 testimony at 11:59:10). And although she initially indicated that the claimant had no more than mild limitation within the area of interacting with others, she testified that the claimant did need accommodations for interactions with others within her narrative residual functional capacity. Specifically, she opined that the claimant would work best in an environment that was "very low-key" regarding stress level; with repetitive routine tasks; and with a limited amount of people, defined as 3-4 people at a time, including coworkers and the public; and she would work best in an environment with limited interaction with others, which she indicated was "not so frequent" (Hearing #2 testimony at 12:02:38). Additionally, she indicated that what she meant by "not so frequent" interaction with others, was less than half the time (Hearing #2 testimony at 12:06:20).

> The opinions of Dr. Porchia were unpersuasive for multiple reasons. As an initial matter, the undersigned notes that Dr. Porchia is an acceptable medical source. Additionally, her opinions were based on her careful review of the medical evidence of record at the time her opinions were given. However, the opinions of Dr. Porchia were internally inconsistent and imprecise. For example, she initially indicated that the claimant had no severe medically determinable mental impairments. However, she then went on to indicate that the claimant did have severe mental impairments, but they only caused moderate limitations within the area of concentrating, persisting, or maintaining pace. Then, when asked for her narrative residual functional capacity, she indicated that the claimant had limitations within the area of interacting with others, despite her initial comment that the claimant had no more than mild limitation within the area of interacting with others. The opinions of Dr. Porchia were internally inconsistent at every turn. Additionally, other significant evidence of record, including the subsequent opinions of Dr. Lace at the third hearing indicated that the record did not support the specific limitations concerning interaction with others opined by Dr. Porchia (Hearing #3 testimony at 3:04:14). Finally, the record as a whole supports that the claimant had greater limitations within the area of adapting or managing oneself than opined by Dr. Porchia. Overall, the opinions of Dr. Porchia were unpersuasive.

(R. 37-38).

Edmiston argues that the ALJ failed to provide a sound basis for rejecting Dr. Porchia's opinion, and claims that the ALJ used a double standard that favored Dr. Lace's opinion. The ALJ found Dr. Lace's opinion "somewhat persuasive". Dr. Lace also testified as a psychological medical expert. The ALJ discussed Dr. Lace's opinion as follows:

> The opinions of the psychological medical expert, Michael Lace, PsyD, were somewhat persuasive. Dr. Lace gave his opinions in Exhibit B38F and through his testimony at the third hearing. In Exhibit B38F, he opined that the claimant had mild limitations concerning her ability to understand and remember simple instructions; carry out simple instructions; make judgments on simple work-related decisions; understand and remember complex instructions; and make judgments on complex work-related decisions (Ex. B38F/3). She had mild limitations concerning her ability to interact appropriately with the public, supervisors, and coworkers;

and respond appropriately to usual work situations and to changes in a routine work setting (Ex. B38F/4). He opined that she had moderate limitation within the area of concentration, persistence, or pace (Id.). He opined that overall, the claimant's conditions were "marginally" severe with no listings met or equaled (Ex. B38F/7). She had mild limitation understanding, remembering, or applying information; mild limitation interacting with others; moderate limitation concentrating, persisting, or maintaining pace; and mild limitation adapting or managing oneself (Ex. B38F/8). He noted that he considered listing 12.06, but the claimant's impairments did not meet or medically equal the listing criteria, and the record did not establish the presence of the paragraph C criteria (Ex. B38F/8-10). Finally, he opined that the claimant was limited to work with no fast paced production requirements (Ex. B38F/11).

Subsequently, at the third hearing held on November 14, 2022, Dr. Lace opined that the claimant did not have any mental impairments that met or medically equaled a listed impairment (Hearing #3 testimony at 3:01:33). He opined that the claimant had mild limitation understanding, remembering, or applying information; mild limitation interacting with others; moderate limitation concentrating, persisting, or maintaining pace; and mild limitation adapting or managing oneself (Hearing #3 testimony at 3:01:50). She was limited to work with no fast-paced production requirements (Hearing #3 testimony at 3:02:16).

The opinions of Dr. Lace were only somewhat persuasive, for multiple reasons. As an initial matter, the undersigned notes that Dr. Lace is an acceptable medical source. Furthermore, he has knowledge and understanding of our programs, policies, and requirements. Additionally, his opinions were based on his careful review of the record and his analysis between the claimant's identified impairments and her corresponding limitations. However, Dr. Lace indicated at the hearing that he had been unable to access the file for a few hours before the hearing and at the hearing, he indicated that he was uncertain if he had the opportunity to review Exhibit B37F. The record as a whole, including Exhibit B37F, supports that the claimant has greater limitations within the areas of interacting with others, and adapting or managing oneself than opined by Dr. Lace. Overall, the opinions of Dr. Lace were only somewhat persuasive.

(R. 39-40).

The issue here is whether the ALJ adequately explained why she did not credit Dr. Porchia's

opinion that Edmiston required a low-stress environment with repetitive, routine tasks and interaction with no more than three or four people at a time and for no more than half the workday. (R. 118-20).  The vocational expert testified that such a limitation would preclude competitive work. (R. 106).

A review of the Decision reveals that the ALJ meticulously discussed Edmiston's mental impairments, the medical evidence related to those impairments, and the opinions from the various medical experts and consultative examiners. (R. 24-27, 41-34). The ALJ discussed Edmiston's function reports, a third-party function report, treatment notes which indicated normal memory, intact language skills, and normal fund of knowledge.  The ALJ also noted that the consultative examiner, the DDS psychological consultant, and the psychological medical expert at the second hearing all concluded that Edmiston had no limitation within the area of understanding, remembering, or applying information.  Further, the ALJ noted that the medical expert at the third hearing concluded that Edmiston had no more than mild limitation understanding, remembering, or applying information.

Additionally, the ALJ discussed the evidence that Edmiston did not have problems getting along with people, and that treatment notes generally indicated that Edmiston was cooperative and had appropriate mood and affect.  The ALJ noted that the consultative examiner concluded that Edmiston would not have any difficulty responding appropriately to supervision and coworkers in a work setting.  Also, the psychological consultant at the reconsideration level opined that Edmiston would have no limitation interacting with others, whereas the psychological medical expert at the second hearing initially indicated that Edmiston would have only mild limitations, but later, at the third hearing, indicated that Edmiston did have functional limitations.

Likewise Edmiston stated in her function reports that she had no trouble paying attention

and treatment notes indicated that she had normal speech, logical and relevant thought processes, normal thoughts, and normal attention span and concentration. At the consultative examination, Edmiston had normal motor behavior and logical and consistent thought processes, with the examiner concluding that Edmiston would have moderate difficulty maintaining attention and concentration. With respect to stress, Edmiston stated in her function report that she did not handle stress or changes in routine well. Edmiston's treatment notes generally indicated that she was cooperative and had appropriate mood and affect. Edmiston told the consultative examiner that her mood was normal and that she was happy most of the time. The consultative examiner opined that Edmiston would have mild-to-moderate difficulty coping appropriately to work pressures. However, at a later consultative examination with Dr. Gupta, Edmiston reported crying spells, feeling sad and being easily agitated. Yet the DDS psychological consultant at the reconsideration level opined that Edmiston had no limitations in adapting or managing herself, and the psychological medical experts at the second and third hearings both opined that Edmiston had no more than mild limitations.

      Thus, the ALJ exhaustively explained the basis of her conclusion to not give weight to Dr. Porchia's opinion that Edmiston is limited to extremely low-stress work. The ALJ meticulously sorted through voluminous treatment notes, medical opinions, and hearing testimony. As the ALJ's conclusions on this point are supported by substantial evidence, there is no basis for remand.

      ***4. Dr. Coulter-Kern's Opinion***

      Dr. Russell Coulter-Kern, PhD., a consultative examiner, opined that Edmiston would not have difficulty understanding, remembering, and carrying out instructions, but would have a

moderate difficulty maintaining attention and concentration.  Dr. Coulter-Kern further opined that Edmiston would not have difficulty responding appropriately to supervision and coworkers in a work setting, but that she would have mild-to-moderate difficulty coping appropiately to work pressures.  (Ex. B11F/5).

The ALJ found this opinion "somewhat persuasive", noting that Dr. Coulter-Kern's conclusions were consistent with other significant evidence of record, but that he did not review the complete record, hear Edmiston's hearing testimony, or conduct an in-person examination of Edmiston.  The ALJ held that subsequent records and Edmiston's testimony at the hearings supported that she had greater limitations in the area of interacting with others than opined by Dr. Coulter-Kern. (R. 36).

Edmiston argues that the ALJ should have credited Dr. Coulter-Kern's opinion that she had moderate limitations in coping appropriately with work pressures.  Edmiston contends that the basis for the RFC assessment with respect to Edmiston's limitations in responding to work pressures is not apparent. (Opening at 24).  In the RFC, the ALJ limited Edmiston to no work requiring a specific production rate, but found that she could "meet production requirements that allow a flexible and goal-oriented pace". (R. 27).  The ALJ then spent considerable time and ink discussing the medical opinions of Dr. Coulter-Kern (R. 31, 36), Dr. Michael Lace (R. 32, 39-40), Dr. Tonia Porchia (R. 33, 37-38), Dr. Joelle Larsen (R. 34), and Dr. Maura Clark (R. 35), all of whom are mental health professionals.  The ALJ also discussed dozens of medical exhibits related to Edmiston's mental health, as well as the hearing testimony.  It is clear to this Court that the ALJ properly considered Dr. Coulter-Kern's opinion, articulated her reasons for giving it less weight, and was within her discretion for giving it the weight she did.  As such, there is no basis for remand.

## CONCLUSION

For the reasons set forth above, the Defendant's Decision is AFFIRMED. The Clerk is directed to enter judgment in favor of Defendant and against Plaintiff.

SO ORDERED on March 15, 2024.

/s/ Holly A. Brady
HOLLY A. BRADY, CHIEF JUDGE
UNITED STATES DISTRICT COURT